J-S18017-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: I.R.H., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| . | |
| APPEAL OF: W.J.H., JR., NATURAL FATHER | |
| | No. 1741 MDA 2015 |

Appeal from the Order Entered September 10, 2015
In the Court of Common Pleas of Luzerne County
Orphans' Court at No(s): A-8294

BEFORE:  BOWES, J., LAZARUS, J., and STRASSBURGER, J.[*]

MEMORANDUM BY LAZARUS, J.:                **FILED FEBRUARY 10, 2016**

W.J.H., Jr. (Father) appeals from the order of the Court of Common Pleas of Luzerne County that granted involuntary termination of his parental rights as to his daughter, I.R.H. (born March 2003).  After careful review, we affirm.

The trial court stated the procedural and factual history of this matter as follows:

> Petitioner, [P.P.] (hereinafter referred [to] as Grandmother) is the maternal Grandmother of the child, I.R.H.  On February 26, 2015, Grandmother filed a [p]etition for [i]nvoluntary [t]ermination of [p]arental [r]ights (Petition) of the Father of the minor child, I.R.H.[,] grounded in Title 23 Pa.C.S. §

---

[*] Retired Senior Judge assigned to the Superior Court.

2511(a)(1).[1]    Natural Mother voluntarily relinquished her parental rights in a separate proceeding.

A hearing was held on August 11, 2015.  The [c]ourt took the matter under brief advisement and on September 10, 2015, the [c]ourt entered a decree terminating the parental rights of . . . Father.

. . .

The minor child, I.R.H.[,] was twelve years old at the time of the hearing on August 11, 2015.  The appeal involves the proposed termination of Father's parental rights.  [Father has been incarcerated since October 2012.]

It is unrebutted that the minor child has been residing with the Grandmother uninterruptedly since the child was three (3) years old.  Grandmother testified that at the time of the child's birth, both Mother and Father and the child were residing with her. Later, Mother and Father moved out of the residence with the child.  Subsequently, Mother and Father were separated and Mother and the child moved in with the Grandmother.

Grandmother testified that she had raised the child throughout the child's life.  Grandmother also testified that Father had requested that a letter be written on his behalf on June 8, 2011[,] in which he had agreed to sign over all of his parental rights to Grandmother.  Grandmother testified that the child was 8 or 9 years old the last time Father saw her.  Grandmother further testified that her house had burned down in

_____

[1] Section 2511(a) of the Adoption Act provides, in relevant part:

(a) **General rule.** – The rights of a parent in regard to a child may be terminated after a petition is filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties;

23 Pa.C.S. § 2511(a).

approximately July 2013. Even though the house burned down, Grandmother testified that she was still receiving mail at the house until approximately two to three months from the hearing date on August 11, 2015. Grandmother completed a change of address form with the post office at that time.

In meeting its requisite burden of proof by clear and convincing evidence regarding the termination of Father's parental rights, Petitioner offered the uncontradicted testimony of the Grandmother. Father also testified before the court on August 11, 2015.

. . .

Father did not attempt to call or write to the child prior to and during his incarceration. Father admitted that he last saw the child in June 2011[,] which was his last contact with the child. Since June 2011, Father did not write, call or send any cards or gifts to the child. Father testified that he was not incarcerated until October 29, 2012. Father did not contact Grandmother subsequent to the letter dated June 8, 2011[,] . . . and Grandmother's residence did not burn until July 2013. Father testified that when he was advised by his [m]other and sister that the Grandmother's house burned down, Father contacted Domestic Relations in [an] attempt to locate an address for the child. However, that is the only effort Father made while he was incarcerated.

Trial Court Opinion, 11/10/15, at 1-3, 7.

Father filed a timely notice of appeal and concise statement of matters complained of on appeal. Father raises the following issue for our review:

Whether the trial court erred in finding that Children and Youth Services met its burden to prove the elements of termination with respect to 23 Pa.C.S.A. §§ 2511(a)(1) and 2511(b), through clear and convincing evidence?

Brief for Appellant, at 3.[2]

_____

[2] We note that neither Grandmother nor the Guardian Ad Litem appointed in this matter filed briefs.

It is well established that:

> In a proceeding to terminate parental rights involuntarily, the burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so. The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." It is well established that a court must examine the individual circumstances of each and every case and consider all explanations offered by the parent to determine if the evidence in light of the totality of the circumstances clearly warrants termination.

*In re Adoption of S.M.*, 816 A.2d 1117, 1122 (Pa. Super. 2003) (citation omitted). *See also In re C.P.*, 901 A.2d 516, 520 (Pa. Super. 2006) (party seeking termination of parental rights bears burden of proving by clear and convincing evidence that at least one of eight grounds for termination under 23 Pa.C.S. § 2511(a) exists and that termination promotes emotional needs and welfare of child as set forth in 23 Pa.C.S. § 2511(b)).

Pursuant to section 2511(a)(1), parental rights may be terminated based upon relinquishment or failure to perform parental duties in the six months prior to the filing of the termination petition. However,

> [a]lthough it is the six months immediately preceding the filing of the petition that is most critical to the analysis, the court must consider the whole history of a given case and not mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

- 4 -

*In re K.Z.S.*, 946 A.2d 753, 758 (Pa. Super. 2008) (citations and quotation marks omitted).

We review a trial court's decision to involuntarily terminate parental rights for an abuse of discretion or error of law. *In re A.R.*, 837 A.2d 560, 563 (Pa. Super. 2003). Our scope of review is limited to determining whether the trial court's order or decree is supported by competent evidence. *Id.*

Instantly, Father argues that Grandmother has failed to present clear and convincing evidence of grounds for termination pursuant to section 2511(a)(1). In support of his position, Father cites to *In re R.I.S.*, 36 A.3d 567, 573 (Pa. 2011) (the court "must inquire whether the parent has utilized those resources at his or her command while in prison to continue and pursue a close relationship with the child"). Father claims that he "did make efforts using all available resources to him. After [F]ather was incarcerated, he made numerous attempts to contact his daughter including writing Domestic Relations, asking for an address. . . . Father learned from family members that the house where [G]randmother was residing had burned down." Brief for Appellant, at 8. Father argues that he should not have been "expected to keep sending letters to a house that he has been told was burned down." *Id.* at 9.

Father's claims that he made numerous attempts to contact I.R.H. and that he used every resource available to him to have a relationship with her are belied by the record. Father did not attempt to obtain a phone number

where he could reach I.R.H. At no time during his incarceration did Father attempt to send mail to the address where Grandmother's house burned down, either before or after the fire.[3] As the trial court noted, Father attempted to get I.R.H.'s new address from Domestic Relations. However, according to Father's testimony, he wrote to Domestic Relations twice, at most, and he made no attempt to determine a way to contact I.R.H. in the six months immediately prior to the filing of the Petition.

Additionally, Father argues that "[G]randmother concealed her whereabouts and her phone number." *Id.* However, even prior to his incarceration, Father failed to write to Grandmother's address and never filed a petition seeking custody or visitation with I.R.H. The record shows that the last time Father visited I.R.H. was in June 2011, well before he was incarcerated in October of 2012. Father testified that the last time he provided any monetary support for I.R.H. was in either 2008 or 2009. *See* N.T. Termination Hearing, 8/11/15, at 51-52. Thus, considering the totality of the circumstances, we find that the termination of Father's parental rights is warranted pursuant to section 2511(a)(1). *K.Z.S.*, *supra*.

_____

[3] We note that although Grandmother and I.R.H. moved after the house fire, mail that was sent to the address was received and then forwarded to Grandmother's new address up until two to three months prior to the termination hearing. Thus, had father sent mail to Grandmother's address in the six months immediately preceding the filing of the Petition, it is likely that the mail would have been delivered successfully.

We next turn to section 2511(b), which requires a determination regarding whether termination best serves the developmental, physical, and emotional needs and welfare of the child.

> Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of a child. . . . [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, . . . the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

*In re K.M.*, 53 A.3d 781, 791 (Pa. Super. 2012) (citations omitted).

Here, the record indicates that the parent-child bond between Father and I.R.H is non-existent. I.R.H. has lived with Grandmother continuously since she was three years old. Father has not seen I.R.H. since 2011. Grandmother meets I.R.H.'s physical and emotional needs, and Grandmother testified that I.R.H. turns to her for emotional support. Moreover, Father makes no specific argument that termination of his parental rights would have a detrimental effect or would not serve I.R.H.'s best interest. Accordingly, we find that the relationship between Father and I.R.H. can be severed without detrimental effects and that it is in the child's best interest that Father's parental rights be terminated. *Id.*

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/10/2016